ORIGINAL ● ●

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. McDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Guam Industrial Services dba Guam Shipyard

**FILED**
DISTRICT COURT OF GUAM
OCT 2 6 2006
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GUAM INDUSTRIAL SERVICES DBA GUAM SHIPYARD, | CIVIL CASE NO. 06-00033 |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' EX PARTE MOTION AND MOTION FOR RELEASE OF VESSEL; DECLARATION OF ELYZE MCDONALD; EXHIBITS A-D; DECLARATION OF SERVICE** |
| TRANSATLANTIC LINES, | |
| Defendant in Personam, | |
| M/V BONITO aka M/V TRANSPACIFIC, | |
| Defendant In Rem. | |

## I.    INTRODUCTION

Under Supplemental Rule of Admiralty E, in considering the appropriate amount of a

bond for the release of the M/V BONITO, the Court must examine whether the bond is sufficient

to cover Plaintiff Guam Industrial Services dba Guam Shipyard's ("Guam Shipyard") claim and

costs.  Defendant Transatlantic Lines Tankholdings Inc.'s ("Transatlantic") posted security of

$310,000 is insufficient to cover the claim and costs.  Guam Shipyard respectfully urges the

Court to set the bond at a minimum amount of $500,000[1] to cover its claim, which includes both principal and accrued interest to date, as well as the costs that have accrued in the attachment and custody of the vessel.

## II.   **BACKGROUND**

In its Complaint, Guam Shipyard seeks damages of principal in the amount of $204,044.19, plus accrued interest in the amount of $105,218, plus the costs of suit. The claim stems from Transatlantic's failure to pay the $204,044.19, or any percentage thereof, owed to Guam Shipyard since December 2004. *See* Compl. Interest has been accumulating on the debt in the amount of 2% per month, as indicated on the Invoice issued to Transatlantic. *See* Ex. A.

The Substitute Custodian, Oceaneer Enterprises, Inc., surveyed the vessel and values it at $11 million. *See* Ex. B.

## III.   **LEGAL DISCUSSION**

Supplemental Admiralty Rule E allows the parties to stipulate as to the amount of a bond for the release of a vessel. If a stipulation cannot be reached, the Court

> shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall not in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller.

Supp. R. E. Guam Shipyard requests that the Court fix the bond at the reasonable amount $500,000, which is less than one and a half times the amount of plaintiff's claim to date.

First, the $310,000 bond deposited by Transatlantic is already insufficient to cover Guam Shipyard's claim and costs to date. $310,000 accounts only for the $204,044.19 owing and the

---

[1] Counsel previously advised counsel for Transatlantic that Guam Shipyard was willing to stipulate to a bond of $450,000. Upon further consideration of the claim and costs, counsel believes that a bond of $500,000 will adequately cover the costs that have occurred and the interest and costs that will continue to be incurred, as will be discussed in this Response.

$105,218 in interest. It fails to account for the costs which are clearly allowed under Rule E. Such costs include the Marshal's services fees of $675, and the Marshal's insurance cost of $600, both of which are taxable pursuant to 28 U.S.C. §§ 1920 and 1921. McDonald Decl., ¶ 3. Guam Shipyard's costs also include the custodian's daily fee which to date cumulatively amounts to $3,000, and the custodian's survey report costing $875. *See* 28 U.S.C. § 1921(a)(1)(E) (taxing as costs fees for the keeping of attached property); McDonald Decl., ¶ 3. In addition, there are various costs associated with maintaining the vessel and for which Guam Shipyard has been unable to obtain an exact figure as of the time this Response is filed. Such costs include pilotage and tugboat costs, which are required to move the vessel from Casamar's dock to anchorage and back because its steering operations are currently under repair,[2] dockage fees charged by Casamar for the time the vessel was docked at Casamar's dock, and anchorage fees for the time the vessel was anchored at the Port, all of which are taxable under 28 U.S.C. § 1921(a)(1)(E). McDonald Decl., ¶ 4. Guam Shipyard submits that no less than $40,000 should be allotted to cover these costs, therefore bringing Guam Shipyard's claim to date to $350,000. McDonald Decl., ¶ 4.

A $310,000 bond also does not cover future interest accruing on the amount of the outstanding debt. The Court must set the bond at not only the amount due at the bond hearing, but a sufficient sum to prospectively cover payment of the claim at the time the case comes to trial.[3] The amount of the bond therefore must be adequate to satisfy all claims and costs that will accrue and be incurred at the end of this case.

Setting the bond amount at a multiplier of the current claim and costs is furthermore significant because, at least according to one court, once a vessel is released from arrest by a

---

[2] *See* Ex. C at 9 (the page states "Page Eight" at the bottom), ¶ F.
[3] *See, e.g., Angad v. M/V FAREAST TRADERS,* 1989 WL 201605 at *3.

bond, the vessel can no longer be held to answer for the claims the bond is designed to meet. *Overstreet v. Water Vessel Norkong*, 706 F.2d 641, 643 n.2 (5th Cir. 1983) (attached hereto as Ex. D for the Court's convenience). If the vessel can no longer be attached, the equities in this case favor requiring a bond of $500,000. The vessel's owners should have no problems posting a bond that represents a small fraction of the vessel's total value (1/22 of its value, to be exact). If the vessel is required to post a bond of $500,000, Guam Shipyard's claims will be adequately secured, and the vessel's owners are not troubled to post an amount significantly beyond what they have already posted.

However, a bond of only $310,000 jeopardizes Guam Shipyard's recovery. Transaltantic's proffered bond of $310,000 does not meet the Rule E standard because it provides security only for the amounts owing to date, excluding costs. If this case proceeds to trial and Guam Shipyard prevails, the amount of the bond will be deficient to cover the interest that accrues in the interim, let alone the costs that the law clearly allows as taxable. Thus, $310,000 does not constitute "an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs." Supp. R. E.

In contrast, $500,000 provides some leeway to cover Guam Shipyard's claim and current and future costs. It accounts for the various marshal, custodian, port, and dockage fees that have accrued. It also accounts for a portion of the further interest that will accrue should this case proceed to trial.

As Rule E states, the bond established by the Court should not exceed two times the amount of the plaintiff's claim. In this case, doubling Guam Shipyard's claim results in a $700,000 bond. A bond of $500,000, $200,000 less than the maximum allotted under the Rule, is warranted under the circumstances and wholly reasonable in this case.

## IV.   **CONCLUSION**

For the foregoing reasons, Guam Shipyard requests that the Court set the bond at $500,000 to cover Plaintiff's claim and costs that have accrued and will continue to accrue until the end of trial.

DATED: Hagåtña, Guam, October 26, 2006.

CARLSMITH BALL LLP

_(signature)_

ELYZE MCDONALD
Attorneys for Plaintiff
Guam Industrial Services dba Guam Shipyard

# DECLARATION OF ELYZE McDONALD

I, Elyze McDonald, declare as follows under penalty of perjury:

1.    I am the attorney for Guam Industrial Services dba Guam Shipyard.

2.    On October 23, 2006, the Court granted Guam Shipyard's request to attach in rem defendant M/V BONITO aka M/V TRANSPACIFIC.

3.    During the attachment, Guam Shipyard incurred fees including: Marshal's services fees of $675; Marshal's insurance cost of $600; the custodian's daily fee which to date cumulatively amounts to $3,000; the custodian's survey report costing $875.

4.    There are various costs associated with maintaining the vessel and for which Guam Shipyard has been unable to obtain an exact figure as of the time this Response and Declaration are filed. Such costs include pilotage and tugboat costs, which are required for the vessel because its steering operations are currently under repair, dockage fees charged by Casamar for the time the vessel was docked at Casamar's dock, and anchorage fees for the time the vessel was anchored at the Port. Guam Shipyard submits that no less than $40,000 should be allotted to cover these costs, therefore bringing Guam Shipyard's claim to date to $350,000.

5.    Attached hereto as Exhibit A is a true and correct copy of the Invoice issued by Guam Shipyard to Transatlantic. The Invoice is also attached as an exhibit to Guam Shipyard's Complaint.

6.    Attached hereto as Exhibit B is a true and correct copy of Oceaneer Enterprises, Inc.'s October 23, 2006 report.

7.    Attached hereto as Exhibit C is a true and correct copy of Oceaneer Enterprises, Inc.'s Condition and Evaluation Report dated October 25, 2006.

Executed this 26th day of October 2006 at Hagåtña, Guam.

CARLSMITH BALL LLP

*Elyze Mcdonald*

ELYZE MCDONALD
Attorneys for Plaintiff
Guam Industrial Services dba Guam Shipyard

## DECLARATION OF SERVICE

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United States, that on the 26th day of October 2006, I will cause to be served, via hand delivery, a true and correct copy of the PLAINTIFF'S RESPONSE TO DEFENDANTS EX PARTE MOTION AND MOTION FOR RELEASE OF VESSEL; DECLARATION of ELYZE MCDONALD; DECLARATION OF SERVICE upon Defendants Counsel of record as follows:

> Jehan'ad G. Martinez, Esq.
> Blair Sterling Johnson Moody Martinez & Leon Guerrero, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop F.C. Flores Street
> Hagåtña, Guam 96910

Executed this 26th day of October 2006 at Hagåtña, Guam.

ELYZE MCDONALD

# EXHIBIT

# "A"



# GUAM SHIPYARD

**P.O. Box 13010**
**Santa Rita, Guam 96915**
**(671) 339-3365/5258 Fax (671) 339-3610/4198**

# INVOICE

**INVOICE NO: 002809**
**DATE: January 13, 2005**

TRANSATLANTIC LINES
6 LINCOLN AVENUE
GREENWICH, CONNECTICUT 06830-5751
Tel: 203-625-5514  Fax: 203-863-9354

| SALESPERSON | P.O. NUMBER | PROJECT | JOB ORDER NO. | TERMS |
|---|---|---|---|---|
| W HANLON | N/A | M/V BAFFIN STRAIT | 0317-0001-0000 | NET 30 DAYS |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| I LOT | TO BILL YOU FOR THE LABOR AND MATERIALS FOR THE SERVICES RENDERED TO M/V BAFFIN STRAIT (4% GRT INCLUDED) | | $ 379,044.19 |
| | LESS: DEPOSIT | | ( 175,00.00) |
| | TOTAL AMOUNT DUE | | $ 204,044.19 |

| | SUB TOTAL | $ 204,044.19 |
|---|---|---|
| | GRT | |
| | TOTAL DUE | $ 204,044.19 |

NOTE: A 2% Finance Charge will be charged on invoice over 30 days past due.  A $35.00 service fee will be charged to all returned check.

Make all checks payable to: GUAM SHIPYARD
If you have any questions concerning this invoice, call: Rossana G. Diaz **at (671) 339-8222** or E-mail at
**rdiaz@guamshipyard.net**

## *We appreciate your business!*

CONTRACTOR NAME:  **M/V BAFFIN STRAIT**

GUAM SHIPYARD

**Contract Nr:**
**Progress Report Sheet**

| Item No. | JobTitle | Prime Man-Hours | Total Price | Start Date | End Date | Revised Date | Percent Completio | Category Key | Status |
|---|---|---|---|---|---|---|---|---|---|
| Arrival | Hull Survey Diver | 0 | $ 2,425.50 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | DHL Bills | 0 | $ 299.23 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | Additional Guards | 44 | $ 3,353.03 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | Order 30 nuts & check valve | 0 | $ 1,121.51 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | Computer Assist | 0 | $ 465.47 | 11/06/04 | 12/31/04 | | | | C |
| WI001 | Safety Releif Valves | 94 | $ 5,277.50 | 11/06/04 | 12/31/04 | | | | C |
| WI 002 | Life boat test & re wire | 112 | $ 5,720.00 | 11/06/04 | 12/31/04 | | | | C |
| WI003 | Labor Assist Fire Protection | 2784 | $ 151,233.79 | 11/06/04 | 12/31/04 | | | | C |
| WI004 | Oily Water Seperator | 120 | $ 6,650.00 | 11/06/04 | 12/31/04 | | | | C |
| WI005 | Blast & Paint fwd. Crane | 272 | $ 18,298.28 | 11/06/04 | 12/31/04 | | | | C |
| WI006 | Hydro Water test hot water | 90 | $ 5,193.00 | 11/06/04 | 12/31/04 | | | | C |
| WI007 | Remote Reach Rod (1) | 174 | $ 12,428.34 | 11/06/04 | 12/31/04 | | | | C |
| WI008 | Trouble Shoot # 2 Air Compressor | 35 | $ 2,692.33 | 11/06/04 | 12/31/04 | | | | C |
| WI009 | Sound Powered Telephone | 173 | $ 10,868.75 | 11/06/04 | 12/31/04 | | | | C |
| WI010 | Bus Breaker | 12 | $ 660.00 | 11/06/04 | 12/31/04 | | | | C |
| WI011 | Hatch Cover Assist | 427 | $ 26,695.00 | 11/06/04 | 12/31/04 | | | | C |
| ~~WI012~~ | ~~CBD Room~~ | 0 | $ ———— | 11/06/04 | 12/31/04 | | | | X |
| WI013 | No 2 Air compressor motor rewind | 56 | $ 3,000.00 | 11/06/04 | 12/31/04 | | | | C |
| WI014 | Rail & Containment | 188 | $ 10,266.25 | 11/06/04 | 12/31/04 | | | | C |
| WI015 | Trouble Shoot Prov Crane | 347 | $ 19,383.25 | 11/06/04 | 12/31/04 | | | | C |
| WI016 | Ship Hailing and Marking | 77 | $ 4,138.75 | 11/06/04 | 12/31/04 | | | | C |
| WI017 | Trouble Shoot repair 4 lights | 71 | $ 3,987.75 | 11/06/04 | 12/31/04 | | | | C |
| WI018 | Fabricate sheet matal spacers for oily water seperator | 24 | $ 1,488.75 | 11/06/04 | 12/31/04 | | | | C |
| WI019 | Typhoon Moore Ship | 218 | $ 14,971.42 | 11/06/04 | 12/31/04 | | | | C |
| WI020 | R/R Stantions on flying bridge for electronics | 16 | $ 857.75 | 11/06/04 | 12/31/04 | | | | C |
| WI021 | Stencil sets | 12 | $ 657.75 | 11/06/04 | 12/31/04 | | | | C |
| WI022 | Pulley Re-Sleave | 16 | $ 857.75 | 11/06/04 | 12/31/04 | | | | C |
| WI023 | Valve | 16 | $ 857.75 | 11/06/04 | 12/31/04 | | | | C |
| WI024 | Sound powered telephone | 0 | $ - | 11/06/04 | 12/31/04 | | | | C |
| WI025 | Gages | 16 | $ 857.75 | 11/06/04 | 12/31/04 | | | | C |
| WI026 | Addl Hatch Work | 12 | $ 657.75 | 11/06/04 | 12/31/04 | | | | C |
| WI027 | Relocate hose stations (2) and cabinet | 24 | $ 1,373.25 | 11/06/04 | 12/31/04 | | | | C |

CONTRACTOR NAME:  **M/V BAFFIN STRAIT**

GUAM SHIPYARD **Contract Nr:**
**Progress Report Sheet**

| Item No. | Job Title | Prime Man-Hours | Total Price | Start Date | End Date | Revised Date | Percent Completio | Category Key | Status |
|---|---|---|---|---|---|---|---|---|---|
| Arrival | Hull Survey Diver | 0 | $ 2,425.50 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | DHL Bills | 0 | $ 299.23 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | Additional Guards | 44 | $ 3,353.03 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | Order 30 nuts & check valve | 0 | $ 1,121.51 | 11/06/04 | 12/31/04 | | | | C |
| Arrival | Computer Assist | 0 | $ - $ 465.47 | 11/06/04 | 12/31/04 | | | | C |
| WI001 | Safety Releif Valves | 94 | $ 5,277.50 | 11/06/04 | 12/31/04 | | | | C |
| WI 002 | Life boat test & re wire | 112 | $ 5,720.00 | 11/06/04 | 12/31/04 | | | | C |
| WI003 | Labor Assist Fire Protection | 2784 | $ 151,233.79 | 11/06/04 | 12/31/04 | | | | C |
| WI028 | Provide Labor Assist to Engineer | 294 | $ 14,998.25 | 11/06/04 | 12/31/04 | | | | C |
| WI029 | Remove and re install door to laundry to rig equipment | 52 | $ 2,657.75 | 11/06/04 | 12/31/04 | | | | C |
| WI030 | Rewind Motor Acom Ladder | 61 | $ 3,546.50 | 11/06/04 | 12/31/04 | | | | C |
| Berthing | Per berthing schedule | 0 | $ 41,104.04 | 11/06/04 | 12/31/04 | | | | C |
| | **Grand Totals** | **5,837** | **$ 379,044.19** | | | | **100.00%** | | |

Payment to Date $ 175,000.00

Final Payment Due $ 204,044.19

# EXHIBIT

# " B "

DPL ✓
EJM ✓

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

*19:15*

Guam Office: 1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339  Office: (671)477-9490  Fax: (671) 477-1645

FAX RECEIVED

OCT 9 4 2006

TIME: 10:32am

10-23-06

To
    United States Marshal Service
    att.Dave Punzalan ,USDM

 CC.Elyze J Mc Donald .Atty.

Ref.: Tanker Bonito / Trans Pacific (new name)

Dave ,

1. I have completed the survey and found that the tanker is a double hull modern unit built in 2001 in Istanbul Turkey .All cargo piping deck and pumproom is stainless steel .
It will take me some time to write the actual survey report  with photos , but the corrected value of the vessel is about :

          US $ 11 000 000.00

2. There is a Purse Seiner comming tomorrow 10-24-06 at 14:30hrs .We will move the tanker therefore to anchorage  . (13:00hrs)
She can return to Casamar pier again 10-25-06 at 08:00 hrs.

Attached : Crew list

                      Rgds.

                  Capt. Unterberg,Ph.D.
                  Surveyor,Keeper of vessel

Consultant
  Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS

Classification Surveyor for: NKLR, KR, CCRS, and other Societies

PASSENGER LIST - CREW LIST   MV TRANSPACIFIC        Continuation Sheet  Page  1  of  1

| Family Name | First Name & Initial | Date of Birth | Nationality/ Document # | Position or Title (Crew Only) | Date Joined (Crew Only) | Date Separated (Crew Only) | Inspection Status (DHS Use Only) Checked box indicates subsequent parole. |
|---|---|---|---|---|---|---|---|
| RYBINSKI | DOUGLAS | 10 FEB 60 | USA | MASTER | | | ☐ |
| RUGGLES | CLIFFORD | 7 JAN 47 | USA | CHIEF MATE | | | ☐ |
| SOUSA | JEFFREY | 16 MAY 71 | USA | THIRD MATE | | | ☐ |
| POULSEN | HENRY | 27 APR 39 | USA | CHIEF ENGINEER | | | ☐ |
| COJOCARU | PAUL | 9 NOV 52 | USA | FIRST ENGINEER | | | ☐ |
| DAVIES | DOUGLAS | 27 FEB 47 | USA | SECOND ENGINEER | | | ☐ |
| OLLIVIERRE | ROGER | 10 OCT 72 | USA | BOSUN | | | ☐ |
| ARRINGTON | HOWARD | 26 NOV 67 | USA | ABLE SEAMAN | | | ☐ |
| CRAMOND | CASEY | 24 SEP 83 | USA | ABLE SEAMAN | | | ☐ |
| NELSON | LARRY | 03 DEC 57 | USA | DEU | | | ☐ |
| UMALI | HECTOR | 10 SEP 62 | PHIL | COOK | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |
| | | | | | | | ☐ |

C.L. RUGGLES

CBP Form I-418 (01/04)

# EXHIBIT

# " C "

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office:  1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339   Office: (671)477-9490  Fax: (671) 477-1645

FAX RECEIVED

OCT 2 5 2006

TIME: 10:46pm

EJM ✓
DPL ✓

To                                                          10-25-06
     USMS ,attn.Dave Punzalan ,USDM      *10:36*

cc.ELYZE J.McDonald ,Atty.

Ref.: TRANSPACIFIC ,ex  Bonito


1. Vessels movements :
10-24-06 : Last Line Casamar : 13:18 hrs
           Let go Anchor opposite Hotel Wharf : 13:42hrs
           5 Schackles down on anchor : 13:48

10-25-06    Tug boat 1st Line to vessel : 08:59hrs
            Pilot on Board               : 09:03hrs
            Tugs all connected           : 09:10hrs
            Anchor home                  : 09:19hrs
            First Line Casamar           : 09:44hrs
            Let go last tug              : 10:04hrs
Vessel now moored at Casamar Dock in good order .


2. Please find attached the Condition and Evaluation Report.
   Photo attachments are on file  in my office .



                              Capt.J.Unterberg,Ph.D.
                              Surveyor /Keeper of vessel

Consultant
  Services:   REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for:  NKLR, KR, CCRS, and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office: 1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339 Office: (671)477-9490 Fax: (671) 477-1645

GUA-J-06-2848-CS

      THIS IS TO CERTIFY , that the undersigned Marine Surveyor did , in connection with the arrest of the M/T "TRANS PACIFIC" of New York, ex M/T "BONITO" of Sweden ,carry out a Condition and Evaluation survey of above vessel, as required , while the vessel lay afloat at the Pier F2 at Casamar Guam Inc. on the 23rd day of October 2006 and subsequent dates , at Guam ,M.I.,USA and report as follows :

## 1. Vessels Identification :

| | |
|---|---|
| Name , ex ,ex | : "TRANS PACIFIC", "BONITO " ex Turcus II . |
| Port of Registry,ex ,ex | : New York , Donso , Turkey |
| Flag , ex | : U.S.A. , Sweden |
| IMO NO. | : 9217321 |
| Type of vessel | : Oil Tanker (clean Cargo) |
| Classification | : Det Norske Veritas (DNV)25183 |
| GRT (TM 69) | : 3,475.00 tons |
| NRT (Intern.) | : 1,614 tons |
| Light Ship Weight | : 2,087 tons |
| LOA | : 108.60 m (356.3 ft) |
| LPP | : 100.23 m (328.84ft) |
| Beam | : 16.19m (53.12ft) |
| Moulded Depth | : 7.25m (23.79ft) |
| Propulsion | : Diesel engine single propeller 2,720KW. |
| Bow thruster | : 365 KW |
| Builder | :Celik Tekne Ship yard,Istanbul,Turkey ,Hull No. 30/2001 |

The vessel is an all welded steel tanker with raked bow and flat stern , with aft superstructure , with six (6) Cargo oil tanks port and six (6) cargo oil tanks starboard .Unit is fitted with a mast located on the focsile deck and a mast located on the compass deck. A crane is fitted around midships .
The hull is coated light grey ,the decks are coated green and the super structure is coated white .
At this time the vessel undergoes a flag change from the Swedish flag to the US flag and based on this names and homeport are in the process of being modified .
All SOLAS and Marpol Certificates are in the process of being replaced and vessel is being brought in to compliance with USCG required standards and rules .

## 2. Modifications :

In compliance with USCG rules all safety equipment including fire fighting equipment,life saving equipment and other loose and fitted gears are being replaced .
Some electronics are in the process of being replaced or added or

Page one

Consultant
Services: REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for: NKLR, KR, CCRS, and other Societies
Case 1:06-cv-00033 Document 20 Filed 10/26/2006 Page 18 of 32

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office:  1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339   Office: (671)477-9490  Fax: (671) 477-1645

GUA-J-06-2848-CS , cont.from page one :

rewired in compliance with applicable rules under US flag .
Navigation Charts are being replaced or updated as required .
US required plaquards , warning signs and other markings are
in the process of being updated / attached as applicable .
The free fall lifeboat was found ashore for recoating in compliance
with applicable rules .
Based on the new requirements all certification is in the process
of  being replaced  and none of the usual certificates aboard a
tanker was available at the date and time of this survey .

3.  Upon Examination of External hull and superstructure found:
a.  The visible parts of the port and starboard side shell plating and
the stern plate and sternframe as far as visible were examined and
found in satisfactory and undamaged condition ,and was coated in
good order with coat being complete .

b.  The focsile deck was examined and found in good order inclusive
protective bulwarks and reelings .Coating was found to be antiskid
type and was complete .
The focsile deck is fitted with following units:
Port and stbd side hatches to focsile internal spaces .
centerline hatch to focsile space .
Two unit anchor windless with mooring winch and capstan .
Transverse mounted mooring winch aft on the focsile deck.
Various rollers and fairleads .
Visible parts of the port and stbd anchor chains were found in
good order inclusive anchors ,swivels and connection links.
Special attention was given to decks machinery foundations and all
found in good order .Access to the focsile deck is by way of stair
port and starboard from the main deck and by way of the centerline
cat walk .

c.  The vessels main deck including Tank tops and external frames ,
cargo tank vent arrangements ,vents and reelings , discharge/loading
stations inclusive their relative catchments ,the cat walk and
stairways to the cat walk and port and stbd side passage ways  were
examined and found in good order .
decks and tanks tops are well coated .
Cargo tank inspection holes and access hatches were examined and
found in safe and satisfactory condition .
The vessels deck crane was examined and found to be a truck crane
type unit with boxgirder boom and hydraulic operated ,SWL was found
to be 3 MT (6614 LBS) at a reach between 3m to 16.5m(9.8ft to 54.13ft)
The unit is located at center line and accessible from the cat walk.

d.  The vessels Poop deck and aft deck was examined inclusive the

Page two

Consultant
Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS

Classification Surveyor for:  NKLR, KR, CCRS, and other Societies
Case 1:06-cv-00033   Document 20    Filed 10/26/2006   Page 19 of 32

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
MASTER MARINE

Guam Office:  1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339    Office: (671)477-9490   Fax: (671) 477-1645

GUA-J-06-2848-CS ,cont.from page two :

relative bulwarks and reelings as applicable and found in
satisfactory well maintained condition .
Special attention was given to vent pipes  and their relative
closing appliances and all found in good order .
The aft deck was found to be fitted with a port and stbd.side
mooring winch and a variety of bitts ,fairleads and rollers .

e.  The boats deck was examined and found in satisfactory condition
inclusive reelings and access stairways .A rescue boat is fitted
starboard side aft and the freefall life boat A-frame foot mounts
were examined and found in good order .

f.  The bridge wings and bridge deck were examined inclusive their
relative bulwarks and reelings as fitted and access stairways
and all found in good and well maintained order .
The port and straboard side bridge wings are fitted with a
control station and gyro repeater .
Aft of the bridge deck is the vessels funnel located .

g.  The vessel compass deck was examined and found in good order
inclusive the relative reelings and access ladder.
Special attention was given to the vessels mast ,fitted with
two (2) units Radar antennae and Navigation and task lights ,
and all found in good order .
The vessels emergency steering compass is fitted at centerline
on the foreward compass deck .  A search light is fitted stbd.
side foreward .

h.  Following draft readings were taken at the time of initial survey:
Foreward port and stbd side : 2.20 m (7.2ft)
Midships port and stbd side : 3.65 m (11.9ft)
Aft port and stbd side      : 4.15 m (14.7ft)

4.  Upon examination of internal hull and superstructure parts found:

A.  The vessel  wheel house was examined and found in good order inclusive
water tight doors and self closing fire door .
The wheel house is subdivided into three major areas which are
the control console ,located foreward port to stbd across the entire
deck , the GMDSS Communication station located aft starboard side
and the Navigation station with chart table located port side aft
of the wheel house .
All areas were found in good order and properly equipped with relative
electronics and other instrumentation and equipments .

Page three

Consultant
  Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for DNV, LR , KR , CCRS  and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office: 1026 Cabras Highway, Suite 113, Piti. Guam 96925
Tel: Home: (671) 789-5339  Office: (671)477-9490  Fax: (671) 477-1645

GUA-J-06-2848-06 , cont.from page three :

b. The wheel house control consoles are arranged in an ope Delta
shape and equipment is fitted as follows from port side to
stbd side :
1 unit Taiyo Weather fax TF-721
Navigation and Task light switch boards
VHF Radio Telephone ,Sperry RT 4822
1 unit Decca Radar , Bridge Master E
1 unit Speed log ,EM 200
1 unit Rate of Turn Indicator
1 unit Sperry Gyro Compass ,0735-94
1 unit Wind Direction Indicator
1 unit Wind Speed Indicator
Basic Alarm Pannel ,Lyngso Marine
1 unit Rudder angle indicator
1 unit Bow thruster control joy stick
1 unit Propeller tachometer
1 unit Propeller pitch indicator
1 unit Auto pilot ,Anschütz ,Pilot Star D
1 unit Engine telegraph
1 unit Decca Radar , Bridge Master E
1 unit VHF Litton Marine System ,Sperry RT 4822
1 unit Electronic Chart ,Transas ES2
1 unit Sperry Marine ES 5000
1 unit Universal A/S  ,Furuno FA-100
Alarm pannel ,Autronica ,NL-190

c. Following units are fitted on the GMDSS communication station:
1 unit MF/HF Control Unit ,Sperry HC 4600,Litton Marine systems
1 unit Inmarsat C Transceiver ,LMS-H2095C
1 unit Litton Marine systems Data terminal,LMS-DT4646E
1 unit Battery condition access indicator in pannel
2 units Sailor Type N1635 Power supplies (Transformer type)
2 unit Computer terminals , Acer
3 units two way VHF Radio telephones with Battery Chargers
   Sailor ,1 unit SN 4143930025 ,two units SN not readable .
1 unit Printer OKI
1 unit copier Kuocera ,FS1118MFT

d. Following units are fitted in the aft Wheel house bulkhead :
2 units Motorola Inmarsat Telephones ,Associate 2000
1 unit Chronometer
1 unit Ships Clock
1 unit Clinometer
1 unit MP-3 Player ,JVC

Page four

Consultant
Services:  REPAIRS OF VESSELS. DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for: NKLR, KR, CCRS, and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office:  1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339   Office: (671)477-9490   Fax: (671) 477-1645

GUA-J-06-2848-CS ,cont.from page four

e. Following units are fitted at the navigation station :
   1 computer ,Averatel
   2 units GPS ,MX Marine , MX 420
   1 unit Barometer
   1 unit Navtex receiver ,Furuno NX-700
   1 unit HP printer , Laser jet 1300

f. The Captains deck was examined and found in good and safe order
   with following spaces :
   (stbd to pt)
   Cabinets
   Masters  Stateroom
   Store
   Chief Engineers Stateroom
   Owners Stateroom stbd aft
   Hospital pt side aft.

g. The 2nd deck was examined and found in good and safe order.
   There are following spaces fitted :
   (pt to stbd ) Fwd part
   3/Mates Stateroom
   Bosuns Cabin
   3rd Engr. Stateroom
   (pt to stbd) Aft part
   Cook's cabin
   Store room
   2nd Engr. Stateroom

h. The Poop deck level internal space was examined and found in good and
   safe order:(pt to stbd)
   Pt side fwd : Cargo Control Room fitted with leak detector pannel
   2 units cargo computers
   1 unit copier .

   Head ,fitted with toilet and wash basin
   Officers Messroom fitted with tables benches and cabinets

   Aft part port to stbd:
   Crews Messroom fitted with tables benches and cabinets
   Pantry
   Galley fitted with SS double sink ,Four plate Marine Stove/oven
   Deep frier and Micro wave oven .

                              Page five

Consultant
  Services:   REPAIRS OF VESSELS, DRYDOCKING. SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for: NKLR, KR. CCRS. and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office:  1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339   Office: (671)477-9490   Fax: (671) 477-1645

GUA-J-06-2848-CS ,cont.from page five :

i. Main deck level accomodation and other spaces were examined and
   found in safe and satisfactory condition as follows :
   (pt to stbd)
   Seaman cabin ,now used as storage space
   pt aft Laundry
   Seaman cabin now used as storage space
   Pump man cabin
   A/B cabin
   A/B cabin
   Change room
   Stbd side CO2 room
   Aft bulkhead fitted with quick closing hydraulic valve activators
   for engine room and pump room .

j. A emergency generator room is fitted on port side ,containing the
   vessels emergency generator unit and switch board .

k. The vessels pump room inclusive all gas safe switches ,ventilation
   fans and piping and water tight doors was inspected and found in safe
   and satisfactory condition .The pumproom is fitted with a man hoist
   and harness and stretcher are in the upper pump room area .
   The pumproom is also fitted with explosion proof lighting .
   There are 3 Borneman Hydraulic driven cargo pumps fitted ,all of
   screw type and a capacity of 450 cubic metter / hr at 2000 RPM .
   All cargo oil related piping and fittings are stainless steel .
   Access to the pumproom is by way of water tight doors from port
   and starboard side main deck .

l. The upper engine room was examined inclusive access doors and stair
   ways and ventilation and lighting and all found in well maintained
   and safe condition .
   Various sub spaces are fitted in the upper engine room area ,such
   as Control room ,workshop,steering gear space ,Boiler platform
   generator platform,Fuel purifier room .

m. The lower engine room was examined and found in safe and well maintained
   condition  inclusive machinery foundations  and bilges .

5. Upon examination of cargo oil tanks and piping found :

a. All cargo oil tanks are coated with epoxy paint and were found in
   well maintained condition with all coating 100% complete .
   Inspection hatches are located on the main deck tank tops .
   Longitudal framing of the tank tops is external .
   The tanker is fitted with port and starboard side tanks .

                              Page six

Consultant
  Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyors for: NKLR, KR, SCRS, and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office: 1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339  Office: (671)477-9490  Fax: (671) 477-1645

GUA-J-06-2848-CS ,cont.from page six :

The unit is of double hull design !
All cargo related piping and valves are stainless steel and all
tanks are fitted with proper tank vents .

b. Cargo tank capacities are as follows : (at 95% )
   CTK 1 pt : 281.753 m$^3$
   CTK 1 stbd:282.035 m$^3$
   CTK 2 pt  :303.245 m$^3$
   CTK 2 stbd:303.181 m$^3$
   CTK 3 pt  :570.453 m$^3$
   CTK 3 stbd:570.805 m$^3$
   CTK 4 pt  :569.435 m$^3$
   CTK 4 stbd:569.376 m$^3$
   CTK 5 pt  :568.792 m$^3$
   CTK 5 stbd:568.376 m$^3$
   CTK 6 pt  :491.390 m$^3$
   CTK 6 stbd:490.003 m$^3$

c. Bunker/Diesel/FW tanks for vessels own use :
   The vessel is fitted with following tanks ,all equipped with
   proper vents with self closing heads ,fill pipes and accessible
   by man holes properly fitted with covers and gaskets and bolted
   down in good order :
   HFO/IFO tanks total capacity : 233.4 m$^3$
   MDO total capacity          :  76.1 m$^3$
   Fresh water total capacity  :  92.0 m$^3$

d. At the time of arrest the vessel carried following consumables
   aboard :

   IFO    : 82.3 M/T
   MDO    : 39.8 M/T
   FW     : 23.0 M/T

6. Upon examination of Machinery Items found:
A. The vessels main engine was found to be a MAN/BW diesel engine
   Model 8LR7768 IVO , serial no. 27003 of 2 720KW/800 RPM.
   Unit is seawater cooled and has dryexhaust and is airstarted
   over her pistons by use of starter valves .
   The unit is sound insulated and reported in good working order.
   Unit was built in 1999 .

B. The Main engine is fitted with a MAN power takeoff on her aft end
   and the power takeoff drives a LS Le Roy sumer shaft generator of
   400 KW.                    Page seven

Consultant
Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for: NKLR, KR, CCRS, and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office:  1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339  Office: (671)477-9490  Fax: (671) 477-1645

GUA-J-06-2848-CS , cont.from page seven :

C.  Two Clayton Steam generators (boilers) are fitted on the boiler
platform fwd upper engine room .
Boiler fuel pumps are located pt and stbd in front of the boiler
platform.Both units are in working order .

D.  Generators :
The vessel is fitted with two unit main generators (1&2) port and
stbd on the generator platform .
Both units have a Yanmar Diesel engine  Model GN65L-EN  of 441KW/2000RPM
as prime movers .Port side engine bears sn.7502FJK and stbd unit
bears sn.7501FJK.
Each diesel prime mover is attached to a Taiyo Generator of
500KVA,50Hz,440V,FE41B-6 .
Both units are in satisfactory and safe operational condition .

E.  Electric systems :
A general examination of electrical systems was carried out with
special attention given to the vessels Main switch board and
control console ,both located in the Upper E/R control room.
A general examination of electric wiring ,starter boxes ,connections
of electric mottors and other electrical installation was carried
out and all found in satisfactory condition .

F.  The vessels steering gear ,vane system with 2 hydraulic pumps was
carried out and it was found that modifications of the related
system are carried out at this time with steering out of order
during modifications .

G.  The vessel is also fitted with a standby generator with MAN diesel
prime mover and Stamford generator of 341 KVA/1500RPM,Type MC-M434C2
sn SWD113949/01 .Unit is located in the E/R generator platform.

H.  The vessel fuel system were examined inclusive fuel pumps,transfer
pumps ,purifiers and piping as far as found necessary and all found
in good working order and safe .

I.  The vessel hydraulic pump systems were examined and found in good
order .This includes hydraulic operated valves ,pumps(cargo) and
decks machinery .

J.  Pumps necessary for the vessels safe operation ,such as Starting air
compressors(2),working air compressors(2),fire pumps,bilgepumps,
cool water pumps, ballast pumps ,domestic water pumps and a variety
of other pumps were examined and found in good and safe working

Page eight

Consultant
Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for: NKIR, KR, CCRS, and other Societies

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
MARINE SURVEYOR
MASTER MARINE

Guam Office: 1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339  Office: (671)477-9490  Fax: (671) 477-1645

GUA-J-06-2848-CS, cont. from page eight :

condition .

7. General Information :
At this time the vessel is in a transitional condition due to
flag change. Safety equipment and Solas /Marpol certification
are not aboard until all required changes and modification for
the new flag state have been completed .
Such at this time the vessel can not trade or navigate legally
out of Guam waters .

8. Evaluation :

Based on this survey and on known prices paid for similar vessel
following values were established :

Present Market Value of Vessel with no SOLAS/Marpol
certification and safety equipment not fitted or incomplete

<u>US $ 7 800 000.00</u>

Present Market Value of vessel with SOLAS/MARPOL certification
process completed and all equipment fitted /aboard and vessel
ready to trade and navigate :

<u>US $ 11 000 000.00</u>
to
US $ 12 500 000.00

This survey and report was carried out without prejudice and
for the sole purpose to establish the vessels condition and
value for the US Marshal Service and the arresting parties .
No warranties are given or implied .

Attachment : Photos

-THE END

Capt. J. Unterberg, Ph.D.
Marine Surveyor Guam

Page nine

Consultant
Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS
Classification Surveyor for:  NKLR, KR, CCRS, and other Societies

# EXHIBIT

# " D "

Westlaw.

706 F.2d 641                                                                 Page 1

706 F.2d 641, 1987 A.M.C. 818
**(Cite as: 706 F.2d 641)**

▷
Overstreet v. Water Vessel NorkongC.A.Miss.,1983.
United States Court of Appeals,Fifth Circuit.
Norman P. OVERSTREET, Plaintiff,
Anita Ann Overstreet, Individually and as
Representative on Behalf of Her Children, Deedee
Dawn Overstreet, et al., Intervenors-Appellants,
v.
The WATER VESSEL "NORKONG," Her Hull,
Tackle, Equipment and Appurtenances, et al.,
Defendants-Appellees.
No. 82-4191.

June 6, 1983.

Seaman who was injured while working aboard
vessel sued the vessel in rem under general
maritime law of unseaworthiness. The vessel was
seized pursuant to arrest warrant but was released
on posting of special bond. The seaman's
estranged wife sought to assert an in rem claim
under the bond for "loss of consortium, society and
services." The United States District Court for the
Southern District of Mississippi, Dan M. Russell,
Jr., J., 538 F.Supp. 53, denied wife's motion to
intervene, and wife appealed. The Court of
Appeals, Alvin B. Rubin, Circuit Judge, held that
although spouse of an injured seaman has cause of
action for loss of seaman's society, that claim is
separate from the seaman's claim, and that the wife
had no right to intervene to assert her claim under
bond posted to satisfy husband's claim.

Affirmed.
West Headnotes
**[1] Admiralty 16 ☞57**

16 Admiralty
    16III Parties, Process, Claims, and Stipulations
or Other Security
        16k57 k. Security for Release of Vessel or
Other Property. Most Cited Cases
Although spouse of an injured seaman has cause of
action for loss of the seaman's society separate from

the seaman's claim for his injuries, injured seaman's
estranged wife was not entitled to assert loss of
consortium on behalf of herself and children of the
marriage under special bond which was posted to
secure release of foreign vessel from arrest in
connection with husband's in rem unseaworthiness
claim, notwithstanding that wife conceded priority
to husband's claim or that her claim stood or fell
with the husband's claim. Supplemental Admiralty
and Maritime Claims Rule E (5)(a, b), (9)(c), 28
U.S.C.A.

**[2] Admiralty 16 ☞57**

16 Admiralty
    16III Parties, Process, Claims, and Stipulations
or Other Security
        16k57 k. Security for Release of Vessel or
Other Property. Most Cited Cases
Once a vessel is released from arrest by bond the
vessel itself can no longer be held to answer for the
claims the bond is designed to meet and bond is
claimant's sole source of recovery. Supplemental
Admiralty and Maritime Claims Rule E (5)(a, b),
(9)(c), 28 U.S.C.A.

**\*642** David C. Frazier, Larry A. Smith, Pascagoula,
Miss., Rod S. Squires, Waco, Tex., for
intervenors-appellants.
Gregg L. Spyridon, William E. Wright, New
Orleans, La., for defendants-appellees.

Appeal from the United States District Court for the
Southern District of Mississippi.

Before RUBIN, GARZA, and WILLIAMS, Circuit
Judges.
ALVIN B. RUBIN, Circuit Judge:
**[1][2]** We are urged to expand an ancient remedy to
accommodate a new right. A seaman libelled a
foreign vessel for injuries allegedly sustained while
he was employed aboard the vessel. The owner
supplied a release bond and the vessel was released

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from seizure. Over a year later the seaman's estranged wife sought to intervene in the suit on her own behalf and on behalf of the children of the marriage to assert the cause of action for loss of consortium first recognized by this court in 1981, on the thesis that the surety bond covered not only the seaman's claim but theirs. The district court, 538 F.Supp. 53, denied the intervention in reliance on an 1895 Supreme Court decision, *The Oregon,* 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895). Finding that, in principle, *The Oregon* 's wake still controls our course, we affirm.

The seaman, Norman P. Overstreet, was injured while working aboard the M/V NORKONG, as a member of its crew, on February 16, 1980. Overstreet sued the NORKONG *in rem* under general maritime law on grounds of unseaworthiness. [FN1] He also sued her owner, Asiatic Drilling Company (Asiatic), and his employer, Scan Drilling Company (Scan), *in personam,* under the Jones Act, 46 U.S.C. § 688 (1976), for negligence. On the day Overstreet filed his complaint, the district court issued a warrant for the arrest of the NORKONG to answer to both the *in rem* and *in personam* claims. The warrant was executed, and the vessel brought to Pascagoula, Mississippi. Asiatic provided a bond issued by Insurance Company of North America (INA) in the amount of $750,000, the condition of which was that Asiatic and INA would "pay the said plaintiff the amount awarded by the final decree rendered in" the proceeding. The vessel was thereupon released and sailed away, never, perhaps, to return. After a hearing, the district court dismissed Overstreet's complaint against Asiatic and Scan for lack of personal jurisdiction. The district court also granted the NORKONG's motion to strike from the complaint Overstreet's allegations of negligence under the Jones Act. *Plamals v. The Pinar Del Rio,* 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827 (1928) (Jones Act claim based on negligence is solely *in personam* and may not be asserted against vessel). The bond must now answer only to Overstreet's unseaworthiness claim against the vessel.

FN1. *The Osceola,* 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760, 764 (1903)

(vessel and her owner are liable for injuries to seaman in consequence of unseaworthiness).

Mrs. Overstreet, appearing individually and for her four minor children, seeks to assert an *in rem* claim under the same bond for what she indiscriminately describes as ***643** "loss of consortium, society and services" arising from her husband's injuries. She contends that she has a right to intervene under Fed.R.Civ.P. 24(a)(2). It is a prerequisite of her intervention that she claim "an interest relating to the property or transaction which is the subject of the action," so we examine first whether she has such an interest in the sole property that is within the court's jurisdiction, the INA bond that stands in the place of the vessel.[FN2]

> FN2. Once a vessel is released from arrest by a bond, the vessel itself can no longer be held to answer for the claims the bond is designed to meet. The bond is the claimant's sole source of recovery. *See The Oregon* (stipulation deemed substitute for vessel itself); G. Gilmore & C. Black, The Law of Admiralty § 9-89 (1975); Harmon, Discharge and Waiver of Maritime Liens, 47 Tulane L.R. 786, 795 (1973) ("The effect of the filing of a bond to release a vessel from seizure is to transfer the lien from the ship to the fund represented by the bond or stipulation.").

In 1981 we held that the spouse of an injured seaman has a cause of action for loss of the seaman's society separate from the seaman's claim for his injuries, and that the spouse's claim need not be asserted in the same proceeding as the seaman's claim.[FN3] Because the spouse's claim turns on the same facts and involves the same issues, presentation of both claims in the same action, when practicable, is desirable.[FN4] But the claim is not the seaman's. It is not a "latent development of [his] damages," as Mrs. Overstreet contends. It is a separate claim, asserted by a separate party, for separate damages.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. *Cruz v. Hendy Int'l Co.,* 638 F.2d 719, 725-26 (5th Cir.1981).

FN4. *Kotsiris v. Ling,* 451 S.W.2d 411 (Ky.1970) (joinder not required, although it is desirable and will probably occur in most cases).

In *The Oregon,* after a libel had been filed against the vessel, the surety gave a stipulation for its release. The court refused to allow additional claimants to intervene, saying, "We know of no authority which permits the liability of sureties upon such a stipulation to be enlarged by the inclusion of claims other than the ones which the stipulators agree to pay." [FN5] It continued, explaining why it found the district court in error, "But if, after the stipulation is given, and the vessel is discharged from custody, other libels are filed, a new warrant of arrest must be issued, and the vessel again taken into custody." [FN6]

FN5. *The Oregon,* 158 U.S. at 206, 15 S.Ct. at 812, 39 L.Ed. at 952.

FN6. *Id.* at 210, 15 S.Ct. at 814, 39 L.Ed. at 954.

The rationale of *The Oregon* was in part that permitting the intervention might prejudice the original libellant if the sureties were unable to respond to the full amount of their stipulation, or to an amount sufficient to pay all the claims.[FN7] Mrs. Overstreet seeks to obviate the problem by conceding priority to her husband's claims. She has, therefore, persuaded us that this reason for the decision in *The Oregon* is not applicable here.

FN7. *Id.* at 210, 15 S.Ct. at 814, 39 L.Ed. at 954.

A second reason for refusing intervention in *The Oregon* was that "[t]he stipulators may be so well satisfied that the [owner of the vessel] has a defense to the original libel as to be willing to take upon themselves the contingency of a decree requiring its payment, but they may neither know, nor be able to

conjecture, what other demands may be made against the property." [FN8] Mrs. Overstreet correctly points out that her claim stands or falls with her husband's and, if he fails, so does she. But this does not mean that INA should reasonably have anticipated, when it negotiated the bond, the interjection of her consortium claim and those of her four children into Overstreet's personal injury action, or that INA could estimate the amount that she and her children might claim. In all likelihood, INA was not apprised of Overstreet's family relationships, nor able to conjecture the degree to which his accident might impair those relationships, when it agreed to post bond for a certain premium. While neither the probability of losing the case nor INA's maximum exposure would be increased by **644 the intervention of Mrs. Overstreet and her children, the amount of the possible award, up to the bond's maximum, would be enlarged. The evidence gives us no way to determine whether this would have affected INA's willingness to supply the bond on the fee charged.

FN8. *Id.* at 206, 15 S.Ct. at 812, 39 L.Ed. at 952.

The Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure provide for release of an arrested vessel on the giving of either a "special bond" [Rule E(5)(a) ] or a "general bond" [Rule E(5)(b) ]. The special bond is given for libels that have already issued. If the parties do not agree on an amount, it is to be "an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs." On the other hand, a general bond is given for actions that may subsequently be brought in which the vessel may be attached or arrested. [FN9] The bond given here was a special bond, and its effect is prescribed by the Rule. When a shipowner secures the release of a vessel seized pursuant to process *in rem,* the Supplemental Rules permit the shipowner to restrict, expressly, his appearance to the defense of that claim and that appearance does not constitute an appearance for the purpose of any other claim with respect to which process is not available or has not been served. Fed.R.Civ.P.Supp.R. E(5). Whatever the reason

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for the rule, it is explicit and categorical.

> FN9. 7A J. Moore & A. Pelaez, Federal Practice: Admiralty ¶ E.13 [1] & n. 7 (1982).

If a special bond is not obtained to secure the release of an arrested vessel, and the vessel is sold to meet the resulting judgment, the proceeds of the sale are deposited in the registry of the court. Third persons who claim an interest in the proceeds may then intervene.[FN10] This, however, is not an intervention in the suit leading to sale. It simply permits all those who did not participate in that proceeding, but who have claims against the vessel that were obliterated by the sale, to assert their claims against the fund into which the vessel has been converted. The proceeds remaining after the libel has been satisfied represent the vessel.[FN11] The surety bond provides no such residual fund for other claimants. It is posted to assure the payment of a single claim, not to stand in place of the vessel for all claims that might be asserted against her.

> FN10. *Jackson v. Inland Oil and Transport Co.,* 318 F.2d 802 (5th Cir.1963) ; *Crabtree v. The S.S. Julia,* 290 F.2d 478 (5th Cir.1961). *See* Fed.R.Civ.P.Supp.R. E.(9)(c) (proceeds of sale to be paid into registry and disposed of according to law).

> FN11. *The Oregon,* 158 U.S. at 211, 15 S.Ct. at 814, 39 L.Ed. at 954.

Mrs. Overstreet contends that the bond should be read in accordance with the intent of the court and that, because the magistrate who fixed the amount of the bond also held that her claim could be asserted against it, we should divine that it was his intention to require the bond to protect against her claims. There are several insurmountable obstacles to this conclusion. The first is that the bond is not ambiguous. The second is that the magistrate did not dictate the terms of the bond, only its amount. And the final one is that he has never suggested that this was his original intention.

We are unable to distinguish *The Oregon* on the basis that it involved a stipulation rather than a bond.[FN12]

> FN12. 7A J. Moore & A. Pelaez, Federal Practice: Admiralty ¶ E.13 [1] & n. 17 (1982) ("[T]he terms 'bond' and ' stipulation' are used interchangeably in the admiralty ...."). The distinction that once existed is explained by Gilmore and Black, The Law of Admiralty 796-97 (2d ed. 1975) (footnote omitted):
> The release of ships from arrest has been governed both by a statutory provision (which is now 28 U.S.C.A. § 2464) and by the former Admiralty Rules. The statute provided for the posting of bonds with the United States Marshal in specified amounts. The Rules provided for release on a stipulation for value entered into by the parties with the amount of the stipulation and the security therefor to be determined by the district judge if the parties could not agree. The stipulation for value was the procedure usually followed for the excellent reason (from the shipowner's point of view) that the release value under stipulation was less than the bonds required under § 2464.
> The authors then explain that, "The matter is currently covered by Supplemental Rule E(5) (F.R.C.P.) which, according to the Advisory Committee's Note, restates the substance of the former Admiralty Rules and also incorporates 28 U.S.C.A. § 2464 ' with changes of terminology, and with a substantial change as to the amount of the bond.' " *Id.* at 797. They characterize the consolidation as a "light-hearted approach to § 2464." *Id.* Gilmore and Black state, "Bonds under § 2464 and stipulations for value under the former Admiralty Rules seem always to have been treated as identical in their legal effect. Presumably, bonds under subsection (a) and (b) of Rule E(5) will continue to be treated as having the same legal effect as stipulations under subsection (c)." *Id.* at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

798.

*645 Finally, Mrs. Overstreet argues that we are not bound by *The Oregon* in determining her right of intervention because the cause of action for loss of consortium did not exist when *The Oregon* was decided. She urges us to follow the example of the Supreme Court in *Moragne v. State Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), in which that Court concluded that the principles underlying the doctrine of *stare decisis* did not counsel against overruling a prior decision. The power to overrule the Supreme Court's decision lies in that court, not in us. While there may be occasional situations when subsequent Supreme Court opinions erode the authority of an earlier Supreme Court case without explicitly overruling it so that we may follow the Court's later lead,[FN13] no such change has occurred with regard to the posting of bonds to secure the release of vessels. While the few cases reported since 1895 involving the issue did not involve loss of consortium, *The Oregon* has been followed. *The Willamette,* 70 F. 874 (D.C.Ill.1892); *Norker v. The S/T Sister Katingo,* 201 F.Supp. 223 (D.Conn.1962). Indeed the Supplemental Rules, adopted in 1966, appear to confirm, not to undermine, *The Oregon.* The genesis of additional claims by new decisions does not alter the reading of the bond.

> FN13. *Rowe v. Peyton,* 383 F.2d 709, 714 (4th Cir.1967), *aff'd,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

In view of the result we have reached, we do not decide whether the claims of a spouse and child for " loss of consortium and society and services" occasioned by a seaman's injury are supported by a maritime lien [FN14] or whether the Overstreet children, like their mother, have a cognizable claim separate from that of their father.

> FN14. Most maritime claims give rise to liens, but, *e.g.,* a seaman's statutory action for personal injury under the Jones Act, 46 U.S.C. § 688 (1976), does not. *See* G. Gilmore & C. Black, The Law of

Admiralty § 9-20 & nn. 86, 95b (1975) (Jones Act claims based on shipowner's negligence do not give rise to liens, but on principle maritime torts should create liens).

For these reasons, the judgment is AFFIRMED.

C.A.Miss.,1983.
Overstreet v. Water Vessel Norkong
706 F.2d 641, 1987 A.M.C. 818

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.